**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Daniel L. Jones,

Plaintiff,

v.

Brian M. Keith and
Margaret R. Keith,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-2741 ADM/SRN

---

David Shoup, Esq., Tindall Bennett & Shoup, P.C., Anchorage, Alaska, on behalf of the Plaintiff, did not appear.

Timothy Thornton, Esq., and Steven LaPierre, Esq., Briggs & Morgan, P.A., Minneapolis, Minnesota, appeared for and on behalf of Defendant Margaret Keith.

---

## I. INTRODUCTION

On December 13, 2001, the undersigned United States District Judge heard Defendant Margaret R. Keith's ("Keith") Motion for Summary Judgment [Doc. No. 131]. Defendant seeks summary judgment on Plaintiff Daniel L. Jones' ("Jones") claims of defamation, tortious interference with contract and intentional infliction of emotional distress. For the reasons articulated below, Defendant's Motion is granted.

## II. BACKGROUND

In 1987, Keith and Jones were both employed at Marys Peak Aviation ("Marys Peak") in Corvallis, Oregon. In late 1986 or early 1987, Keith and Jones had a sexual relationship. *See* Keith Dep., at 62-66, 69; Jones Dep., at 12, 15. After their consensual relationship had ended, Jones attempted to rape Keith in her Marys Peak office in late April, 1987. *See* Keith Aff. ¶ 2.

FEB 25 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Keith reported Jones' sexual attack to Mark Brown, an owner of Marys Peak. *See* Keith Aff. ¶ 3; Brown Aff. ¶ 4. Keith also reported the incident to the local police. *See* Keith Aff. Ex. A. On or about May 1, 1987, Marys Peak terminated Jones. *See* Brown Aff. ¶ 6; Bowers Aff. ¶ 6; Walti Aff. ¶¶ 3-4.

Jones contends that he was not fired from his job at Marys Peak, but alleges that he resigned in August, 1987. *See* Jones Dep., at 44. He cannot recall receiving compensation from Marys Peak from May, 1987, through August, 1987. *Id.* Jones asserts that he worked at Marys Peak as an unpaid apprentice aircraft mechanic under the tutelage of his friend, David Yeakel. *Id.* at 8-9. Yeakel conceded that while Jones assisted him as an apprentice repairing aircraft after May, 1987, Jones was not "formally employed by Marys Peak." Yeakel Dep., at 55.

Marys Peak's time sheets for Jones indicate he worked through April, 1987, and do not document Jones' working beyond that date. *See* LaPierre Aff. Ex. D. The time sheets demonstrate that Jones earned $4,177.77 at Marys Peak from January 1, 1987 through April 30, 1987. *Id.* Social Security Administration records show that Jones earned $4,365.30 at Marys Peak for the entire year of 1987. *See* LaPierre Aff. Ex. H. The difference in these amounts is the equivalent of approximately one week of pay for Jones. *See id.* Ex. D; Def. Mem. in Supp., at 3-4.

In 1987, Jones filed a claim against Marys Peak for unemployment compensation. Jones Dep., at 96-97; LaPierre Aff. Ex. I. Pursuant to Oregon law, employees who voluntarily resign are disqualified from receiving unemployment compensation. *See* Or. Rev. Stat. § 657.176(2)(c) (1987); *Ponder v. Employment Dept.*, 15 P.3d 602, 604 (Or. Ct. App. 2000). At his deposition, Jones was without explanation how he could have been eligible for unemployment benefits if he

voluntarily resigned, as he contends he did. *See* Jones Dep., at 96-97.

The life paths of Keith and Jones did not cross again until the mid-1990s. In December, 1995, Keith was hired as a pilot by Northwest Airlines ("Northwest"). Keith Dep., at 85. Coincidentally,[1] Northwest hired Jones as a pilot in September, 1996. Jones Dep., at 101. While both were working for Northwest, Jones and Keith saw each other in the mail room of the Minneapolis-St. Paul Airport. *See* Keith Dep., at 130-32; Jones Dep., at 101-04. Although their versions of the encounter differ, they both agree that Keith gave Jones her phone number. *See* Keith Dep., at 133-34; Jones Dep., at 102. Jones called and left a message, and Keith returned the call the same day. Keith Dep., at 135-37; Jones Dep., at 102.

Later, Keith received a sexually harassing voice mail message. Keith testified that she heard Jones' voice on the message say: "Hi. This is -- [short pause] -- John. If you want to get fucked, you know where I am." Keith Dep., at 137; *see* Keith Aff. ¶ 5.

After receiving the voice mail, Keith was uncertain about how to handle the situation. Keith Aff. ¶ 6. She sought the advice of a few colleagues, but did not identify Jones by name. *Id.*; Keith Dep., at 112-13. Out of concern for her safety, Keith decided to report the matter to Northwest pursuant to its sexual harassment policy. *See* Keith Aff. ¶ 6; Keith Dep., at 83; Tice Aff. Ex. D, at 3-4.

Northwest maintains a "Zero Tolerance" sexual harassment policy. The policy specifically provides that: "Northwest Airlines will not tolerate any individual engaging in verbal, physical, or other conduct which has the purpose or effect of unreasonably interfering with a person's work performance, or which creates an intimidating, hostile or offensive work

[1] Further testament to the reality: "it's a small world after all."

environment." Tice Aff. Ex. D, at 2. Employees who believe they have been victims of harassment are instructed to tell the offending individual to stop and "immediately report the situation to [their] supervisor or manager." *Id.* at 3-4. Moreover, Northwest's Rules of Conduct for its employees state that it "expressly prohibits all forms of sexual harassment." Tice Aff. Ex. F, at 13. Accordingly, "[e]mployees are obligated to [report] incidents of sexual harassment at the time they occur." *Id.*

Consistent with Northwest's sexual harassment policy, Keith reported her history with Jones to Marie Emeott, a human resources executive with responsibility for such matters. *See* Keith Dep., at 112; Keith Aff. ¶ 6. Northwest investigated Keith's allegations. Robert Tice, a senior attorney in Northwest's Labor Relations Department, conducted the inquiry. Tice Dep., at 15-16; Tice Aff. ¶ 2-3. During his investigation, Tice learned that Jones had been involuntarily discharged from Marys Peak. Tice Aff. ¶ 3. Because Jones' application with Northwest stated that he had never been discharged from any position, Tice further inquired into the circumstances of Jones' employment with Marys Peak. *See* Tice Dep., at 27, 50; Tice Aff. Ex. E, at 6. Mark Brown, an owner of Marys Peak during the relevant time period, informed Tice that Jones was dismissed from his job shortly after Keith reported the attempted rape in late April, 1987. *See* Tice Dep., at 25-31. Tice found that Keith's 1987 police report of the incident corroborated this information. *Id.* at 20-21.

Based on the information collected during Tice's investigation, Northwest concluded that Jones had been involuntarily discharged from Marys Peak, and that his termination date was the first week of May, 1987. *Id.* at 50. Northwest thus determined that Jones' employment application was false. *Id.* Jones' employment application with Northwest included a

certification of veracity and that "any misrepresentation or concealment of information, regardless of when it is discovered, will be sufficient grounds for dismissal from or refusal of employment." Tice Aff. Ex. E, at 8. Northwest discharged Jones.

Jones then sued Keith, alleging defamation, tortious interference with contract and intentional infliction of emotional distress. Jones bases his allegations on Keith's reporting to Northwest the harassing voice mail, and her providing information to Northwest about Jones' attempted rape and his discharge from employment by Marys Peak.

## III. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). While the facts must be viewed in the light most favorable to Jones on this summary judgment motion by Keith, this does not mean the court must ignore facts in the record that may be unfavorable to Jones. *See Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996); *Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 857 n.1 (7th Cir. 1997); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 367 (7th Cir. 1997) ("[The court] will not ignore facts in the record merely because they are unfavorable to [the non-movant].").

### A. Defamation

Jones alleges that Keith defamed him by telling Northwest that Jones had been fired from

Marys Peak, by accusing him of attempted rape, and by accusing him of leaving a harassing message on her voice mail. *See* Pl. Mem. in Opp'n., at 13-14. To be considered defamatory, a statement of fact about a plaintiff must be communicated to someone other than the plaintiff, it must be false, and it must tend to harm the plaintiff's reputation and to lower him or her in the estimation of the community. *See Lewis v. Equitable Life Assurance Soc'y*, 389 N.W.2d 876, 886 (Minn. 1986); *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980). There is no dispute that Keith communicated statements of fact about Jones to Northwest. The other two elements of the prima facie case, falsity and causation of damages, are at issue here.

Truth is a complete defense to defamation. *Lewis*, 389 N.W.2d at 889; *Stuempges*, 297 N.W.2d at 255. Keith told Northwest that Jones was fired from his job at Marys Peak. The record indicates that Marys Peak discharged Jones the first week of May, 1987. Jones' assertions about his continued employment at Marys Peak as an unpaid apprentice aircraft mechanic beyond May, 1987, and voluntary resignation in August, 1987, do not create a *genuine* issue of fact regarding his discharge from the position he held prior to May, 1987. The record shows that Jones' compensation as an employee at Marys Peak ended the first week of May, 1987. The owners and managers at Marys Peak testified that Jones was terminated at that time. *See* Brown Aff. ¶ 6; Bowers Aff. ¶ 6; Walti Aff. ¶¶ 3-4. Jones' testimony about his unpaid aircraft mechanic apprenticeship does not contradict this evidence. Significantly, Jones applied for unemployment benefits in 1987, although a voluntary resignation would disqualify an employee from receiving unemployment compensation. *See* Or. Rev. Stat. § 657.176(2)(c) (1987); *Ponder v. Employment Dept.*, 15 P.3d 602, 604 (Or. Ct. App. 2000). No reasonable juror could believe Jones

voluntarily resigned from Marys Peak. *See Anderson*, 477 U.S. at 249 ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party").

The next question is whether Jones has presented prima facie evidence that Keith's statements caused damage to his reputation. This is not a case of defamation *per se*, where damages are recoverable without proof of actual damages. *See Anderson v. Kammeier*, 262 N.W.2d 366, 372 (Minn. 1977). Along with charges of a crime, imputations of a loathsome disease, and unchastity, statements affecting a person's conduct of business, trade, or profession may be actionable without proof of damages. *Id.* However, the words must be peculiarly harmful to the person in his business. *Id.* Stating that a person has been fired does not constitute defamation *per se* because the fact does not necessarily injure or discredit the discharged employee. *See Fairbanks Pub. Co. v. Pitka*, 445 P.2d 685, 689 (Alaska 1968) ("assertion that one had been fired from his employment is not defamatory *per se*"); *see also Estate of Martineau v. ARCO Chemical Co.*, 203 F.3d 904, 913-14 (5th Cir. 2000); *Sangston v. Ridge Country Club*, No. 92-1981, 1992 WL 317138, at *4 (N.D. Ill. 1992), *aff'd*, 35 F.3d 568 (7th Cir. 1994). Defamation *per se* is limited to certain types of statements which are so harmful that damages will be presumed.

Jones fails to demonstrate that Keith's statement to Northwest caused him damage. Northwest's decision to discharge Jones was a result of its own investigation. Keith's report merely prompted Northwest's investigation of Jones. Northwest's policies mandate an investigation into allegations of sexual harassment. After assessing the evidence collected during

the inquiry, Northwest reached its own conclusions regarding Jones' honesty on his employment application.

Moreover, even assuming Jones were able to establish a prima facie case of defamation, a qualified privilege shields Keith from liability under the circumstances. Qualified privileges attach to a broad range of circumstances where the interest in shielding the defendant from defamation liability is considered worthy of protection. *Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 328 (Minn. 2000) (citations omitted). A qualified privilege applies when a court determines that "statements made in particular contexts or on certain occasions should be encouraged despite the risk that the statements might be defamatory." *Lewis*, 389 N.W.2d at 889. A statement enjoys a qualified privileged "if made upon proper occasion, from a proper motive, and based upon reasonable or probable cause." *Bauer v. State of Minnesota*, 511 N.W.2d 447, 449 (Minn. 1994) (citing *Stuempges*, 297 N.W.2d at 256-57).

Employees should not be intimidated from reporting sexual harassment by the specter of a defamation lawsuit. Communications involving investigations into employee misconduct have long been shielded by the qualified privilege. *See McBride v. Sears, Roebuck & Co.*, 235 N.W.2d 371, 374 (Minn. 1975). This privilege is based upon the employer's "important interest in protecting itself and the public against dishonest or otherwise harmful employees." *Id.* Keith reported the harassing phone call and her prior encounters with Jones pursuant to Northwest's sexual harassment policy. As such, Keith's statements are protected by a qualified privilege. *See Lee v. Metro. Airport Comm'n.*, 428 N.W.2d 815, 819 (Minn. Ct. App. 1988). Defamation litigation must not be allowed to undermine the public policy of eliminating sexual harassment

from the workplace.

Employees may not abuse this qualified privilege to report harassment. A showing of common law malice, ill will, or improper motive may nullify a qualified privilege. *See Moreno*, 610 N.W.2d at 328 (citations omitted). Malice is defined as "actual ill-will or a design causelessly and wantonly to injure plaintiff." *Bol v. Cole*, 561 N.W.2d 143, 150 (Minn. 1997). Jones has failed to set forth sufficient evidence creating a genuine issue as to whether any of Keith's statements to Northwest were the result of ill will and improper motives, or causelessly and wantonly with the intention of injuring him. Before reporting the incident to Northwest, Keith sought the advice of senior pilots without mentioning Jones' name. Keith understood the serious nature of her allegations. Northwest's sexual harassment policy provides that employees may be fired for filing a false harassment complaint. *See* Tice Aff. Ex. D, at 6. Keith did not abuse the qualified privilege. Summary judgment on Jones' defamation claim is granted.

**B. Tortious interference with contract**

To state a claim for tortious interference with contractual relations, Jones must show that "(1) a contract existed; (2) the alleged wrongdoer had knowledge of the contract; (3) the alleged wrongdoer intentionally interfered with the contract; (4) the alleged wrongdoer's actions were not justified; and (5) damages were sustained as a result." *Guiness Import Co. v. Mark VII Distribut., Inc.*, 153 F.3d 607, 613 (8th Cir. 1998) (citing *Sip-Top, Inc. v. Ekco Group, Inc.*, 86 F.3d 827, 832 (8th Cir. 1996) (applying Minnesota law)); *see also Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1994). Minnesota has not recognized a tortious interference cause of action against a co-employee, such as Keith. The Minnesota Court of Appeals held that, as a matter of

law, a tortious interference claim against a co-employee does not exist. *Nordling v. Northern States Power Co.*, 465 N.W.2d 81, 87 (Minn. Ct. App.), *rev'd on other grounds*, 478 N.W.2d 498 (Minn. 1991). On appeal in the same case, the Minnesota Supreme Court affirmed the dismissal of the tortious interference with contract claim against the co-employee. *Nordling v. Northern States Power Co.*, 478 N.W.2d 498, 507 (Minn. 1991). The Supreme Court stated that "[w]hether a tortious interference claim against a co-employee--*i.e.*, an employee without any supervisory role over plaintiff--might ever lie, we need not decide." *Id.* The decision was based on the theory that a co-employee's conduct could not have caused the plaintiff's dismissal by a supervisor. *Id.*

There is no authority or factual predicate to support a cause of action for tortious interference with a contract against a co-employee in this case. Because Keith did not have any supervisory authority over Jones, she lacked the capacity to cause his discharge. Keith reported sexual harassment pursuant to Northwest's policies. Northwest decided to fire Jones based on its own investigation into the matter and its conclusion that Jones had falsified his employment application. Northwest made the decision to terminate Jones. Summary judgment is granted.

**C. Intentional infliction of emotional distress**

To establish a claim for intentional infliction of emotional distress, Jones must show that Defendant intentionally or recklessly engaged in extreme and outrageous conduct, causing him emotional distress, and the distress was severe. *See Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983). The Minnesota Supreme Court has underscored the limited scope of such claims and warned that they are "sharply limited to cases involving particularly

egregious facts." *Id.* at 438-39. Indeed, Jones must identify conduct "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.*

Jones merely presents conclusory assertions that Keith's statements to Northwest constitute intentional, extreme and outrageous conduct. Keith's actions do not rise to the level of extreme and outrageous conduct. *See Meleen v. Hazelden Found.*, 740 F.Supp. 687, 694 (D. Minn. 1990); *Pecore v. Lewis Truck Lines, Inc.*, No. C9-92-14559, 1994 WL 517621, at *2 (Minn. Dist. Ct., May 9, 1994). Jones admitted that he has not been treated for any emotional, mental, or psychological problems. *See* Jones Dep., at 20. Because no genuine issue of material fact exists regarding Jones' claim of intentional infliction of emotional distress, summary judgment is granted.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Margaret Keith's Motion for Summary Judgment [Doc. No. 131] is **GRANTED**.

BY THE COURT:

[signature]
ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: February 25, 2002